[See Cases Nos. 10.342. 10,843, and 10.346.]

## Case No. 10,345.

NORTHWESTERN UNION PACKET CO. v. ST. LOUIS.

[4 Dill. 10; 23 Int. Rev. Rec. 33; 4 Cent. Law J. 58; 15 Alb. Law J. 107.] [1]

Circuit Court, E. D. Missouri. Jan., 1877.[2]

WHARFAGE — COMMERCE — WHEN FEES VALID — JUST COMPENSATION—POLICE POWERS OF MUNICIPALITY—CONSTRUCTION OF STATUTES.

1. A city cannot levy a tax in the nature of a tonnage duty upon vessels or commerce, nor can it do so by way of discrimination. But a city, under legislative authority. can lawfully charge reasonable compensation for the use of expensive and artificial conveniences. which a vessel may use at its option: there being ample space elsewhere for it to land within the harbor. where no artificial or expensive improvements have been made.

[Cited in Leathers v. Aiken, 9 Fed. 681.]

2. The ordinance of the city of St. Louis prescribing certain wharfage dues at the improved wharves constructed by it. graduated according to the size of the vessel. to be ascertained by its tonnage, is not in conflict with the provisions of the federal constitution in respect to inter-state commerce, nor with the prohibition that "no state shall. without the consent of congress, lay any duty of tonnage."

3. Taxes or dues paid under protest may be recovered back if the taxes or assessments were illegal, and the payment thereof involuntary.

4. Whether the payment of the taxes. under a mere written protest. delivered from time to time, without any process being issued by the city, and where the mode of enforcing the wharfage dues, as prescribed by the ordinance. is by

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission. 15 Alb. Law J. 107. contains only a partial report.]

[2] [Affirmed in 100 U. S. 423.]

[1] [Reported by Hon. John F. Dillon. Circuit Judge, and here reprinted by permission.]

action against the owner or person in charge of the boat, in which it is provided that, if convicted, the judgment shall be a fine in a sum double the amount of wharfage due the city, payment of which fine and costs shall operate as a discharge in full of the demand, is such an involuntary or compulsory payment of the taxes as will give the party so paying the right to recover back the amount, even if the ordinance under which the tax was demanded is illegal—quaere?

5. If fees be authorized by a municipality on commerce, etc., amounting to a tax upon commerce and beyond just compensation for the use of improved wharves, they cannot be collected. To be valid, they must be within the limits of just compensation.

6. A municipality in the exercise of its police powers may control the landing of boats by designating the place where they shall receive or discharge freight or passengers, and charge a reasonable compensation therefor.

7. Statutes partly in conflict with the constitution will be *held* void only as to those parts which are unconstitutional. This rule is extended to the case of a statute or ordinance authorizing two or more acts, one of which is within and the other without legislative authority.

8. The judgment of the supreme court of Iowa on the constitutionality of the ordinance was affirmed by the supreme court of the United States at the October term, 1877. [Keokuk • Northern Line Packet Co. v. Keokuk] 95 U. S. 80.

9. As to recovery back of wharfage taxes paid under a void ordinance, see Kyle Steamboat Co. v. New Orleans [Case No. 7,854], U. S. Circ. Ct. La. before Billings, J.; Dill. Mun. Corp. § 751; Keokuk v. Keokuk Northern Line Packet Co., [45 Iowa, 196], 4 Cent. Law J. 280, note, and cases cited.

This action against the city of St. Louis is to recover back wharfage dues, collected by the city in 1870, 1871, and up to March, 1872, from the plaintiff's boats. The payments were made under "written protest, without waiving the right of the owners of the boats to recover the same from the city by an action at law."

D. D. Duncan and James H. Davidson, for plaintiff.

E. T. Farish, for city.

Before DILLON, Circuit Judge, and TREAT, District Judge.

TREAT, District Judge. This case involves the right of the plaintiff to recover back money paid under protest. Within adjudicated cases, the right of action exists if the taxes or assessments were illegal, and the payment thereof was involuntary. The main proposition, therefore, requires a determination of the question as to wharfage tax proper—what it is, and where it ends. Under the decisions of the United States supreme court as to tonnage duties, regard being had to dicta concerning wharfage tax, the rules of law may be thus stated: 1st. The general power of a state to tax property must, in its exercise, impose the tax, not on the tonnage of the vessel, but on the money value of the vessel. 2d. It is beyond the power of a state or municipality to tax a vessel, foreign or domestic, for the privilege of landing or anchoring in any port, whether the tax is upon the tonnage of the vessel or otherwise. 3d. It is in the power of a municipality, under legislative authority, to exact reasonable wharfage for the privilege of landing at an improved wharf, care being had to prevent the municipality from imposing tonnage or other prohibited rates or taxes, under the pretence of collecting wharfage dues. It is very difficult, in the light of adjudicated cases, to draw the precise line, in general terms, between the various classes. The foregoing rules must suffice for a guide.

It appears from the facts agreed that the city claims to be proprietor of most of the river front, a part of which has been improved, graded, and paved by the city, at large cost. Under the supposed authority vested in it by charter, and under ordinances pursuant thereto, it has made many regulations of a police nature, not only as to the parts of the harbor where vessels, rafts, etc., may land, but also as to the safety of the inhabitants dependent upon the character of the cargo—whether explosive, dangerous, etc. It is admitted that, under said regulations, the plaintiff used the improved part of said landing, or the so-called wharf, thus artificially made and designed for specific purposes. The rates of wharfage charged were not in all cases a specific sum for a specified time, but a rate dependent on the tonnage of the vessel.

If the city had a right to charge wharfage, then the sole question is, whether it is prohibited from making its rates dependent on the tonnage of the vessel, eo nomine, instead of its length, denoting the space it would occupy, or whether the city should fix its rate of wharfage, arbitrarily, upon every craft landing, irrespective of tonnage, size, etc. It would be a narrow view of the question to admit that wharfage is collectible, and to hold at the same time that the amount of wharfage dues is not collectible because that amount, though reasonable, is, instead of a sum certain upon every craft, adjusted to the size of the craft, to be ascertained by its tonnage. It may be conceded that no municipality can forbid the entry, anchoring, or landing of a vessel engaged in foreign or inter-state commerce, unless it pays a tonnage duty for said privilege. It must also be held that, when there is ample space for landing within a harbor outside of the improved part thereof, or wharves, if a vessel is desirous of receiving the benefit of said improvements for the purpose of the extra facilities thereby furnished for mooring safely and conveniently, and loading and unloading cargoes, and also for the accommodation of passengers, said vessel thus availing itself of the extra facilities to secure which the municipality has made large expenditures, should pay therefor a reasonable compensation. The case might be very different if a city, claiming the entire river front, forbade anchoring or landing within its limits without payment of tonnage duty. It could not stop the right

to navigate and trade from port to port, but it could lawfully designate, within its police powers, at what part of the port the landing should be made. This might be as important for sanitary as other useful purposes. To hold otherwise would be to decide that the population of every town and city is deprived of the right of self-protection, and is absolutely at the mercy of every vessel which arbitrarily chooses to bring infectious diseases and consequent death with it.

There is a rational limit in all questions of this kind. No city, under pretence of wharfage dues, is permitted, in order to replenish its treasury, to levy a tax in the nature of a tonnage duty upon vessels of commerce; nor can it do so by way of discrimination. Each city under legislative authority, or riparian owner, can lawfully charge a reasonable compensation for the use of expensive and artificial conveniences, which a vessel may use or not at its option, there being ample space elsewhere for it to land within the harbor, where no artificial or expensive improvements have been made. In such instances there is no impediment to commerce—no tonnage or other exactions restrictive upon navigation, but merely facilities furnished, which, if used, ought to be paid for. The vessel is not bound to use such facilities; but if it does, why should it not contribute to the costs and maintenance thereof?

Although the St. Louis ordinance prescribes wharfage dues at the improved wharves by it constructed—graduated according to the size of the vessel, to be ascertained by its tonnage—such wharfage dues are not tonnage duties within the inhibitions of the constitution.

DILLON, Circuit Judge. 1. I concur in the conclusion, and mainly in the reasoning of the foregoing opinion. I have some doubt whether the payment of the taxes, under a mere written protest, delivered from time to time, without any process being issued by the city, and where the mode of enforcing the wharfage dues, as prescribed by ordinance, is by an action against the owner or person in charge of the boat, in which it is provided that, if convicted, the judgment shall be a fine in a sum double the amount of wharfage due the city, payment of which fine and the costs shall operate as a discharge in full of the demand (City Harbor Ordinance, § 36), is such an involuntary or compulsory payment of the taxes as will give the party so paying the right to recover back the amount, even if the ordinance under which the tax was demanded is illegal. But as the counsel for the city does not press this point in the argument submitted, I pass it without decision—the more readily because the parties evidently desire a determination of the validity of the ordinance, and because the conclusion reached on this subject renders it unnecessary to decide whether the payments were compulsory in such a sense as to give

the right to recover them back, if the tax was not legally demandable or enforceable by the city.

2. Part of the river bank in front of the city of St. Louis has been graded, rip-rapped, and macadamized or paved, at "an enormous expense to the city," for the purpose of affording facilities for the landing, loading and unloading of steamboats at the city. Boats landing within the harbor of the city, but away from the paved or improved wharf, are not required to pay wharfage (Ordinance, § 35); but boats landing at the paved and improved wharf are required to pay wharfage dues or tax. Section 28 of the ordinance prescribes the time that "shall be allowed to boats to discharge and take in cargo at the paved wharf, according to their respective tonnage"—i. e., the more tonnage a vessel has, the longer the time allowed to occupy the wharf. Section 30 of the ordinance, which is attacked by the plaintiff as in conflict with the constitution of the United States, is in these words: "There shall be collected from each and every boat, of whatever kind, except such as are hereinafter excepted, for each and every time the same shall come within the harbor of this city, and land at any wharf or landing, or be made fast thereto, or to any boat thereto fastened, or shall receive or discharge any freight or passengers in this city, five cents for each ton of said boat's burden, by custom-house measurement, as wharfage dues: provided, that any boat making regular daily, semi-weekly, tri-weekly, or weekly trips, may pay wharfage dues at a different or special rate, as may be provided by this chapter."

The charter of the city authorizes it "to charge and collect wharfage and tonnage dues," and section 30 of this ordinance is not claimed to be invalid, unless it is in conflict with the provisions of the federal constitution in respect to inter-state commerce, and the prohibition that "no state shall, without the consent of congress, lay any duty of tonnage." It may be admitted that the right to the free navigation of the Mississippi river is, under the provisions of the constitution relating to commerce, and the prohibition upon the states to levy duties upon vessels the vehicles of commercial intercourse (Steamship Co. v. Port-Wardens, 6 Wall. [73 U. S.] 34, 35), inconsistent with the right of a state absolutely to prohibit steamboats from landing at a city or port without paying for the privilege. The ordinance of the city (section 2) defines the harbor of St. Louis to extend "from the mouth of the Missouri river to the southern boundary of the city." The city has not undertaken to demand of the plaintiff wharfage for all boats landing at any point within its corporate limits. But a city is under no legal obligation to provide, at its own expense, an improved wharf, and to allow all vessels to use the same without compensation. It may be that a city cannot, even under authority from the state, compel

vessels to land at its improved wharf, and levy a toll or tax therefor. No such thing has been here attempted. The case before us shows that the city has improved a wharf for the convenience of commerce. It demanded compensation from such boats as saw fit to avail themselves of the improved wharf. The plaintiff's boats voluntarily used this wharf. It is expressly admitted in the stipulated facts "that the several sums demanded and collected by the city are a reasonable compensation, provided the city was entitled to collect any dues from steamboats under the ordinance and laws" in that behalf. Congress has not seen proper to legislate on this subject, and the many provisions of the ordinance of the city of St. Louis "establishing and regulating the harbor department" of the city show the necessity for regulations in respect to the landing of boats and vessels of all kinds, and the desirableness of appropriate facilities therefor. Unless, therefore, the ordinance of the city provides for a tax or duty on tonnage, it would seem to be free from any constitutional objection.

It requires of boats landing, or making fast to the wharf or landing, or receiving or discharging freights or passengers in the city, to pay five cents for each ton of the boat's burden as wharfage dues. Other sections of the ordinance show that the city does not demand wharfage dues for landing away from the improved wharf; and it is expressly agreed in this case that "the boats of the plaintiff only landed at the improved wharf, where accommodations existed therefor." Under the facts of this case, the words of section 30, requiring wharfage dues from any boat which "shall receive or discharge any freight or passengers in the city," have no application, and it is not necessary to construe them in connection with other parts of the ordinance, nor to affirm their validity.

As the plaintiff voluntarily used the improved wharf for its boats, and as it is admitted that the compensation therefor prescribed in the ordinance is reasonable, I am of opinion that the ordinance is not invalid merely because it fixes and graduates the amount by reference to the tonnage or capacity of the boat. A previous section makes the time which the paved wharf may be used by the boats depend on their tonnage, which is obviously a reasonable provision, and by section 30 the amount of compensation is graduated in the same way. If it appeared that the city was attempting, under the cover of a wharf tax, to levy duties on the tonnage of vessels, or to exact payment for the mere privilege of landing within the city, its pretensions could not be supported.

Upon the case before us, my judgment is that the city is not liable to pay back the money for which this action is brought. Judgment for defendant.

[The judgment of this court was affirmed by the supreme court. where it was carried on writ of error. 100 U. S. 423.]